UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HENRY VASEL,
    *Plaintiff*,

v.

MICHAEL GARRAHY and TOWN OF
ROCKY HILL,
    *Defendants*.

No. 3:19-cv-1241 (JAM)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Henry Vasel has volunteered for decades with the fire department in Rocky Hill, Connecticut. He also served a term as the mayor of the Town of Rocky Hill. A few years after he entered politics, however, the fire chief demoted him from his position as captain at the fire department and took away some of his fire department responsibilities. Vasel believes that this was punishment for his political activity.

Vasel also has Crohn's disease. And he thinks that the Town wrongly failed to accommodate his disability.

Vasel has therefore sued the Town and its fire chief for First Amendment retaliation and disability discrimination. The defendants have moved for summary judgment. Because most of the acts that Vasel challenges happened outside the limitations period, and because he has failed to show a genuine fact issue as to the remaining acts that are not time-barred, I will grant the motion.

**BACKGROUND**

Vasel has volunteered for the Rocky Hill fire department since 1999. For years, he served with no issues. Indeed, in 2008, he became the department's public information education

1

officer, which meant that he wrote press releases after emergencies that entailed a fire department response. The role earned him the title of captain and a stipend of $1,250 per year.[1]

But starting in 2013, he clashed with the fire chief, Michael Garrahy. The trouble, Vasel says, began when he ran for mayor. Vasel was a Republican; Garrahy, a Democrat. According to Vasel, Garrahy warned him against running, supported his Democratic opponent, and punished him for running by stripping him of certain firefighting duties.[2] Still, Vasel won the 2013 election. But he lost reelection in 2015 and ran and lost again in 2017.[3] Vasel claims that throughout these years, Garrahy kept undermining his campaigns and punishing him for his political activity.

The most severe punishment, Vasel says, was losing his public information education officer role at the fire department. By early 2017, Vasel had stopped issuing press releases after emergencies. At first, he blamed this on medical reasons.[4] But later that year, he claimed that he had stopped doing the job because Garrahy had made it unreasonably hard.[5] Whatever the reason, after Vasel had gone almost a year without writing a press release, he was demoted from his position as public information education officer. He also lost his captain title and stipend.[6] Vasel believes that he was demoted because of his politics.

Finally, Vasel claims that he faced disability discrimination. He has Crohn's disease, a digestive disorder.[7] In June 2016, he asked the fire department whether he could drive to emergencies in his own car rather than go on the firetruck. He explained that because of his disease, he sometimes needed to use the bathroom urgently. And if he had a personal car with

---

[1] Doc. #96-1 at 1, 3 (¶¶ 1–2, 10, 13)
[2] *Id.* at 28–30 (¶¶ 143–47, 151–53).
[3] *Id.* at 2, 31 (¶¶ 5–7, 158).
[4] Doc. #85-16.
[5] Doc. #85-19 at 6–7.
[6] Doc. #85-20 at 3; Doc. #96-1 at 18–19 (¶¶ 86–87).
[7] Doc. #96-1 at 33 (¶ 163).

him, he claimed, he would have an easier time finding a bathroom on short notice.[8] But the Town denied his request, citing safety.[9] Around the same time, the Town's human resources director suggested getting him an iPad, thinking that it might help him write press releases when his illness was flaring up. But the Town never followed through.[10]

In August 2019, Vasel filed this lawsuit against Garrahy and the Town. He sues both defendants for First Amendment retaliation under 42 U.S.C. § 1983 (Count One).[11] He also sues the Town under the Americans with Disabilities Act (Counts Two and Three) and for free-speech retaliation under Conn. Gen. Stat. § 31-51q (Count Four).[12] The defendants have moved for summary judgment on all four claims.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).[13]

---

[8] *Id.* at 9 (¶ 46).
[9] *Id.* at 12–13 (¶ 61).
[10] *Id.* at 8 (¶ 41); Doc. #85-5 at 3–4 (¶¶ 10–12).
[11] Doc. #38 at 15–16 (¶¶ 46–53).
[12] *Id.* at 16–20 (¶¶ 54–78). He originally brought his ADA claims against Garrahy too, but those parts of the claims were dismissed. Doc. #73.
[13] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text

### *Free speech claims (Counts One and Four)*

Vasel believes that the defendants retaliated against him because of his political activity in running for mayor. He brings a federal claim for First Amendment retaliation under § 1983 (Count One) and a state claim for free-speech retaliation under Conn. Gen. Stat. § 31-51q (Count Four).

Vasel alleges that he faced many acts of retaliation because of his politics. He first ran for mayor in 2013. After he announced his candidacy, he says, Garrahy warned him against running, "harass[ed] and intimidate[d] him," and stripped him of his job as "the designated point of contact for potential new [volunteers]."[14]

Still, he won the race. But after he won, Garrahy reassigned three more of his fire department jobs: certifying and fitting masks, making identification tags, and monitoring safety compliance during emergency calls.[15] Plus, right after Vasel won, Garrahy asked the town manager to investigate whether he could still serve as a captain in the fire department while he was the mayor.[16] (He could.)

Vasel claims that this mistreatment continued during his 2015 reelection campaign. Garrahy allegedly told retired firefighters that Vasel was a liar and let only Vasel's opponent, but not him, campaign at the department's annual clambake.[17] Plus, Vasel says, some time in fall 2015 or earlier, Garrahy altered the department's attendance log to make it falsely say that Vasel had not showed up to a particular fire call.[18] And after Vasel lost the election, Garrahy stripped him of another task, recertifying the department's firetruck drivers.[19]

---

quoted from court decisions.
[14] Doc. #96-1 at 28–29 (¶¶ 143–47).
[15] *Id.* at 30–31 (¶¶ 151–53).
[16] *Id.* at 29–30 (¶¶ 148–49).
[17] *Id.* at 31 (¶¶ 156–57).
[18] *Id.* at 19 (¶ 90).
[19] *Id.* at 23–24 (¶¶ 111–15).

Vasel ran for mayor one more time, in 2017. He lost again. And he thinks that after he lost, he faced one last round of retaliation: Garrahy demoted him from public information education officer, causing him to lose his captain title and stipend.[20]

The defendants argue that none of these acts can support a retaliation claim. I agree. Most happened a long time ago, well beyond the three-year statutes of limitations that govern his claims. He has sued too late to challenge all but two of the acts he complains about. And for these two acts, there is no genuine fact issue to show that they resulted from his political activity.

In Connecticut, a plaintiff must bring a § 1983 claim within three years of when he "kn[ew] or ha[d] reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002); *see Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). Likewise, a claim for free-speech retaliation under § 31-51q is subject to a three-year statute of limitations. *See* Conn. Gen. Stat. § 52-577; *Chapman v. Sikorsky Aircraft Corp.*, 2015 WL 75493, at *2 (D. Conn. 2015). Vasel knew of his injuries when they happened. And he filed this lawsuit in August 2019. That means he may not sue on the basis of events that happened before August 2016.

Vasel replies that all the acts he challenges were part of a single "continuing violation." Not so. For purposes of his federal claim, a defendant's acts make up a continuing violation only if they "collectively constitute one unlawful practice." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). According to the Second Circuit, "the continuing violation doctrine … applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of

---

[20] *Id.* at 18–19 (¶ 87).

mistreatment." *Ibid.* The Second Circuit in *Gonzalez* declined to apply a "continuing violation" rule to a prisoner's First Amendment retaliation claim. *Id.* at 222–23.

The acts that Vasel challenges are discrete. Their only connection is that they all had the same allegedly illegal motive. Therefore, the acts are at best "serial," not "continuing" violations. *See Birch v. City of New York*, 675 F. App'x 43, 44–45 (2d Cir. 2017) ("[R]etaliatory events such as punitive transfers, undesirable assignments, and poor performance reviews[ are] discrete discriminatory acts [that] are not actionable if time barred.").

Vasel fares no better under Connecticut law. He argues that under state law, all the acts make up a "continuing course of conduct." But for the same reason why the acts are not a continuing violation, they are not a continuing course of conduct either. A "violation [is not] deemed continuing" if it comprises "discrete act[s]" and the damages are "readily calculable without waiting for the entire series of acts to end." *Watts v. Chittenden*, 301 Conn. 575, 588–89 (2011); *see also Essex Ins. Co. v. William Kramer & Assocs., LLC*, 331 Conn. 493, 503 (2019). The acts alleged by Vasel were all discrete, and their harm could have been calculated immediately. They accordingly did not make up a continuing course of conduct.

Therefore, Vasel may base this action only on acts that happened after August 2016. But even as to these acts, Vasel must prove causation: that the adverse acts he endured were *caused* by his protected speech. *See Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015); *McClain v. Pfizer, Inc.*, 692 F. Supp. 2d 229, 241 (D. Conn. 2010). Vasel has failed to show a genuine fact dispute over causation as to the only two acts that occurred after August 2016: his demotion from the public information education officer role and his loss of responsibility for re-certifying department drivers.[21]

---

[21] The record does not definitively establish when Vasel lost his job recertifying drivers. *Compare* Doc. #96-1 at 31 (¶ 154) (Vasel's statement of facts suggesting that he lost the job after the 2013 election), *with id.* at 23 (¶ 112)

Start with the demotion. Vasel claims that he lost his position as public information education officer because of his political activity. But the undisputed evidence shows that Vasel lost this position for a different reason: he stopped doing the work and misled the Town about why.

In early 2017, Vasel stopped issuing press releases. In February, Garrahy emailed him to ask why. Vasel replied that he had "been suffering from health/disability related conditions."[22] Two weeks later, the Town sent Vasel a letter, telling him that because a disability was interfering with his public information education officer duties, the Town would temporarily reassign the duties to someone else. The Town asked him to let it know within two weeks what accommodations he needed to resume his job. The Town assured him that he could keep his title and pension credit for now.[23]

Vasel blew past the two-week deadline. Even so, in July, the Town gave him another chance to ask for accommodations. This time, Vasel did reply—to ask for a two-month extension. He said that he needed more time partly "to submit information from [his] medical providers."[24]

In September, Vasel finally gave the Town a substantive response. But he changed his story. He now told the Town that he had really stopped writing the press releases because Garrahy had made the job too hard.[25] The previous November, Vasel claims, Garrahy had ordered him to write press releases within one hour of any emergency. Because Vasel thought

---

(Vasel's admitting that this happened "in or around 2016"). Viewing the facts in the light most favorable to Vasel for purposes of this motion, it appears that there is a genuine issue of fact as to whether he was stripped of the job recertifying drivers after August 2016.
[22] Doc. #85-16.
[23] Doc. #85-15.
[24] Doc. #85-18 at 3.
[25] Doc. #85-19 at 6–7; Doc. #96-1 at 38 (¶ 186).

7

that this was "an unreasonable requirement for a volunteer position," he stopped doing the job.[26] This was Vasel's only explanation for why he stopped; he did *not* blame his absence on a disability. Indeed, he later testified that his Crohn's disease had *never* interfered with his public information education officer job.[27]

After that, Vasel and the Town sent a few more letters back and forth. Two weeks later, the Town told Vasel that he had misunderstood the fire chief's requirements, and that he was "not expected to perform [his job] when [he was] on vacation or out of Town and unavailable."[28] "Under those circumstances," it said, "the Chief will ensure that the information reaches the media."[29]

Vasel claims that three weeks later, his "counsel notified the Town … in writing that [he] was ready, willing and able to [resume his job] and that he demanded reinstatement of his position."[30] But Vasel has not submitted a copy of this letter or quoted it, and I have found no other reference to it in the record. Vasel's claim about what his counsel did is otherwise hearsay that may not be considered as competent evidence for summary judgment. *See, e.g.*, *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013).

Finally, about two weeks later—in December 2017—Garrahy told Vasel that he would be demoted from public information education officer.[31] He explained that Vasel was being demoted because he had "failed to perform [his public information education officer] duties at all, citing to medical reasons for refusing to do so," yet had "willfully refused to provide" "medical documentation."[32] He further advised that Vasel would no longer receive his stipend

---

[26] Doc. #85-19 at 6.
[27] Doc. #96-1 at 14 (¶ 68).
[28] Doc. #85-25 at 2.
[29] *Ibid*.
[30] Doc. #96-2 at 15 (¶ 63).
[31] Doc. #85-20; Doc. #96-1 at 18–19 (¶ 87).
[32] Doc. #85-20 at 3.

8

for performing the duties of public information education officer but that "the removal of your … title will not result in economic loss relative to your monthly retirement benefit or eligibility for retirement under the Rocky Hill Volunteer Firefighter Pension Plan."[33]

In sum, the undisputed facts show that before Vasel was demoted, he did not do his public information education officer job for almost a year. And he misled the Town for months about why. Since Vasel now claims that his Crohn's disease never interfered with his job, he must have known the whole time that he did not have a medical excuse. But he strung the Town along for seven months, saying that he was disabled and hinting that medical evidence was on the way. The whole time, he kept his title and collected his stipend without working. And when he finally gave a new excuse, it did not make sense: even if the job was too demanding, why did he stop doing it *entirely*? It was no surprise and not political retaliation when the Town gave up and demoted him.

True, Vasel claims that at the end of the saga, he wrote a letter reasserting that he was willing to do the job. And although he offers no proof that he sent this letter, at the summary judgment stage, I will assume that he did. But this letter does not help his argument. For months, the Town waited while Vasel gave it delayed and conflicting explanations for his absence. Just because Vasel demanded his job back, it does not mean that he had explained why things would be different this time. So even if Vasel did send the Town a letter, he has not shown that the Town acted improperly in ignoring it.

Although the defendants have a credible explanation for demoting him, that does not necessarily entitle them to summary judgment. If Vasel had other evidence that their explanation was really a pretext, then he still might deserve a trial on causation. But he has none. He proffers

---

[33] *Ibid.*

no telltale direct evidence of a retaliatory motive. And while he does offer some evidence that he had clashed with Garrahy over politics in the past, he has failed to link this evidence to his demotion. Most of the evidence is from years earlier. And unlike the other alleged retaliation, the demotion was not Garrahy's decision alone: the Town's human resources director and lawyer were also involved.[34] Given this, and given the defendants' compelling and documented reason for demoting Vasel, no reasonable jury could find that the defendants demoted him because of his political activity.

Next, Vasel alleges that he also lost his job recertifying firetruck drivers as punishment for his politics. But Garrahy testified that Vasel lost the job because in 2016, the department "[re]structure[d] the recertification program in accordance with best practices recommended by the Town's insurer."[35] At that point, the chief took the job away from several firemen—not just Vasel—and reassigned it to other supervisors.[36] Vasel has not tried to rebut this explanation.[37] There is thus no genuine dispute that Vasel did not lose this role because of retaliation.

In short, there is no genuine issue of fact to support Vasel's claims for First Amendment retaliation and free-speech retaliation under Conn. Gen. Stat. § 31-51q. Most of these claims are time-barred. For those acts that are not time-barred, there is no genuine issue of fact to establish causation between the alleged retaliatory acts and Vasel's protected activity. Accordingly, I will grant the defendants' motion for summary judgment as to Counts One and Four.[38]

---

[34] Docs. #85-15, #85-25.
[35] Doc. #85-3 at 10–11 (¶ 36).
[36] *Ibid*.
[37] Doc. #96-1 at 23–24 (¶¶ 111–16).
[38] Vasel states in the background section of his summary judgment brief that in 2017, Garrahy ordered him to not use campaign photos showing him with other firemen. This allegation could perhaps support a theory that Garrahy *directly* infringed his speech rights by silencing his political messages. But Vasel has not argued this and has brought only a First Amendment *retaliation* claim. He has therefore waived any argument that this incident violated the First Amendment. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014).

### *Americans with Disabilities Act claims (Counts Two and Three)*

In Counts Two and Three, Vasel sues the Town under the ADA (42 U.S.C. § 12131 *et seq.*). In Count Two, he brings a claim under Title I of the Act; in Count Three, a claim under Title II.

The ADA broadly protects against disability-based discrimination. "It forbids discrimination against persons with disabilities in … employment, which is covered by Title I of the statute; [and in] public services, programs, and activities, which are the subject of Title II." *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004). Under both titles, discrimination "includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 & n.7 (2d Cir. 2003).

Vasel argues that the Town violated the ADA by failing to accommodate his Crohn's disease. He believes that the Town should have let him drive to fire department emergencies in his own car and that it should have given him an iPad to write press releases.[39]

I will assume for purposes of this motion only that Vasel can claim the protection of both titles.[40] Even so, the Town is entitled to summary judgment. Vasel's Title I claim is untimely, and his Title II claim fails on the merits.

Title I of the ADA governs employment-related ADA claims, and it requires a plaintiff to timely exhaust his administrative remedies before seeking relief in court. To this end, a plaintiff

---

[39] Vasel makes a dubious claim that an iPad was necessary to allow him to write press releases while in use of the bathroom facilities because of his Crohn's disease.

[40] If Vasel is an employee subject to coverage under Title I of the ADA, then he cannot maintain a claim under Title II of the ADA. *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013). Even assuming he is not an employee and is merely a volunteer, some courts have ruled that a fire department volunteer does not qualify for protection under Title II of the ADA. *See Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 741 (D.N.J. 2013), *aff'd on other grounds*, 559 F. App'x 139 (3d Cir. 2014); *Tawes v. Frankford Volunteer Fire Co.*, 2005 WL 83784, at *6–*7 (D. Del. 2005).

must file an administrative complaint within 300 days of the complained-of conduct, and the basis for any subsequent federal court action must in turn be based on the conduct that could properly have been the subject of an administrative complaint. *See, e.g.*, *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 75 & n.5 (D. Conn. 2014) (citing 42 U.S.C. § 2000e–5(e)(1), as incorporated by reference into the ADA, 42 U.S.C. § 12117(a)).

Vasel filed a complaint with the Connecticut Commission on Human Rights and Opportunities in June 2018.[41] Therefore, in accordance with the 300-day limitations period, he cannot sue over any failure to accommodate that occurred before August 2017. But Vasel asked for accommodations in 2016.[42] His failure-to-accommodate claim is therefore untimely under Title I.

Once again, Vasel replies that the Town denied him these accommodations as part of a continuing violation. But that is not correct. As the Second Circuit has explained, "an employer's rejection of an employee's proposed accommodation … does not give rise to a continuing violation. Rather, the rejection is the sort of discrete act that must be the subject of a complaint to the EEOC within 300 days." *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003) (religious accommodation claim); *Barrett-Browning v. Dep't of Correction*, 2020 WL 5118132, at *5 (D. Conn. 2020) (applying *Elmenayer* to ADA claims); *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (same). Vasel's Title I claim is time-barred.

Title II does not have a similar exhaustion requirement. *See Mary Jo C.*, 707 F.3d at 170 n.11. I will therefore assume that Vasel's requests were timely for purposes of that title. Even so, his claim fails on the merits. Under Title II, a local government may not deny someone "the

---

[41] Doc. #96-1 at 24 (¶ 119).
[42] *Id.* at 12–13 (¶¶ 60–61).

opportunity to participate in or benefit from [its] services, programs, or activities … by reason of [his] disability." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015). But "the access afforded need not be total so long as it is 'meaningful.'" *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 63 (2d Cir. 2021). "A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." *McElwee v. Cty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012). And the fact record here conclusively shows that Vasel did not need to drive to emergencies in his own car or to receive an iPad to meaningfully take part in the fire department's programs, services, and activities.

In fact, there is no evidence that an iPad would have helped him at all. When his doctor wrote what accommodations he needed, the doctor did not mention the iPad.[43] Accordingly, Vasel now concedes that "there's no medical evidence that the use of a laptop was medically necessary," and that "at no time did [his] Crohn's disease interfere with his ability to be a public information officer."[44]

By contrast, if Vasel could drive in his own car, he might be able to volunteer somewhat more. But there is no evidence that Vasel needs this exemption to volunteer *meaningfully*. He has admitted that "[i]n the approximately 7200 fire calls [he] made during his fire service to date, his gastrointestinal issues never prevented him from attending a call, and never caused him to leave a fire scene [early]."[45] Indeed, in each of the last five years, he has been the department's most or second-most active volunteer.[46]

---

[43] Doc. #96-10.
[44] Docs. #85-10 at 28, #96-1 at 14 (¶ 68).
[45] Doc. #96-1 at 10 (¶ 47).
[46] Doc. #103-1 at 3 (¶ 6).

Perhaps Vasel has not been able to volunteer as much as he would like. But no jury could reasonably find that he has been deprived of a meaningful opportunity to take part in the fire department's activities. *Cf. Am. Council of Blind of New York, Inc. v. City of New York*, 495 F. Supp. 3d 211, 233–34 (S.D.N.Y. 2020) (holding that blind New Yorkers were meaningfully excluded from walking around the city when only 3% of intersections had accessible crossing information).

Vasel claimed in passing in his complaint that he also faced *retaliation* because he requested disability accommodations. But I have already orally ruled that Vasel may not bring a retaliation claim under Title I.[47] And Vasel has otherwise failed to pursue his retaliation claim under Title II. In their motion for summary judgment, the defendants argued that Vasel had failed to show that he had suffered any adverse action *because* he requested accommodations.[48] Vasel did not respond to this: in the argument section of his brief, he defends only his failure-to-accommodate claim on the merits, and mentions his retaliation claim only to argue that it would be timely under Title I.[49] Thus, Vasel has abandoned his Title II retaliation claim. *See Jackson*, 766 F.3d at 196.

Even assuming that Vasel did not forsake his Title II retaliation claim, it fails for lack of evidence to create a genuine fact issue. It is illegal to retaliate against someone "on account of his or her having exercised … any right granted or protected by [the ADA]." 42 U.S.C. § 12203. But a defendant may rebut a retaliation claim under the ADA by proffering a legitimate, nondiscriminatory reason for its action. *See Widomski v. State Univ. of New York at Orange*, 748 F.3d 471, 476 (2d Cir. 2014). If the defendant does so, however, the plaintiff may still succeed

---

[47] Doc. #35.
[48] Doc. #85-2 at 37–38.
[49] Doc. #96 at 36, 39–49.

14

on his claim if he can show that the proffered reason was a "pretext" for discrimination—that is, by showing that the defendant's stated reason was untrue or incomplete and that it was discrimination that played a causal role. *Ibid*.

Vasel claims that the Town demoted him to punish him for merely requesting accommodations. But as I have explained, there is no genuine dispute that the Town really demoted Vasel because he had stopped doing his job. And Vasel has only scant evidence that this explanation is a pretext. He claims that in 2016, when he first hired a lawyer and asked for accommodations, Garrahy threatened to "make him pay" for that.[50] But because this happened over a year before Vasel was demoted, because Garrahy was not the only person involved in demoting Vasel, and because the Town has a compelling explanation for demoting Vasel, no jury could reasonably find that the Town's explanation was a pretext to mask retaliation against Vasel for complaining about disability discrimination.

In short, there is no genuine issue of fact to support Vasel's failure-to-accommodate (or retaliation) claims under the ADA. Accordingly, I will grant the defendants' motion for summary judgment as to Counts Two and Three.

## CONCLUSION

The Court GRANTS the defendants' motion for summary judgment (Doc. #85). The Clerk of Court shall close the case.

It is so ordered.

Dated at New Haven this 2nd day of February 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[50] Doc. #96-1 at 35–36 (¶ 177).